IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DONALD KRAUSE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. **3:07-CV-0615-L** |
| v. | § | |
| | § | |
| **WILLIAM CHIPPAS d/b/a** | § | |
| **FUTURESCOM INVESTMENT** | § | |
| **PUBLICATIONS d/b/a FUTURESCOM**, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are the Motions to Dismiss of Defendants William Chippas, "FuturesCom Investment Publications d/b/a FuturesCom," and Investment Publications of the Palm Beaches, Inc. for Lack of Personal Jurisdiction, for Improper Venue (Alternatively, to Transfer Venue), for Failure to State a Claim, and for Failure to Plead Properly, filed April 30, 2007. After carefully considering the motion, briefing, record, and applicable law, the court **grants** Defendant Chippas's alternative motion to transfer venue; **denies as moot** Defendant Chippas's motions to dismiss for lack of personal jurisdiction, improper venue, failure to state a claim, and failure to plead properly; and **denies as moot** the motions made by Defendant Investment Publications of the Palm Beaches, Inc.[*]

**I.     Factual and Procedural History**

---

[*]Defendant Investment Publications of the Palm Beaches, Inc. was named as a Defendant in Plaintiff's Original Petition filed in state court. After these motions were filed, Defendant filed an amended pleading in this court, Plaintiff's Complaint, and did not include this party as a defendant. In the amended pleading, Plaintiff states that all claims against this Defendant "are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a)." Compl. ¶ 3. Accordingly, there are no claims against this Defendant to dismiss.

**Memorandum Opinion and Order – Page 1**

Plaintiff Donald Krause filed his Original Petition in the 14th Judicial District Court, Dallas County, Texas on November 21, 2006, alleging claims of negligence, negligent misrepresentation, breach of fiduciary duty, breach of contract, deceptive trade practices, common law fraud, statutory fraud, conversion, violation of the Texas Securities Act and the Securities Exchange Act of 1934, unjust enrichment, and conspiracy against Defendants William Chippas, FuturesCom Investment Publications d/b/a FuturesCom, Investment Publications of the Palm Beaches Inc., IBDirect, LLC, and Kurt Edwards. Defendants IB Direct, LLC and Curt Edwardson, who were apparently misnamed in the Original Petition, removed the case to this court on April 9, 2007. All Defendants filed motions to dismiss on April 30, 2007. Plaintiff filed a Complaint in this court on June 4, 2007, dismissing without prejudice his claims against Defendants Investment Publications of the Palm Beaches, Inc., IBDirect, LLC, and Curt Edwardson. Plaintiff brought all of the same claims against Defendant William Chippas d/b/a FuturesCom Investment Publications d/b/a FuturesCom (hereinafter, "Defendant" or "Chippas"), except for the conspiracy claim.

The court looks to the Complaint as the live pleading in this case. Krause alleges that in January 2002, he signed up for a one-month free membership trial period for Chippas's website www.futurescom.com. Compl. ¶¶ 5-7. Krause contends that he did not renew his membership upon the expiration of the trial period, and told Chippas that he was not interested in renewing the service. *Id*. ¶ 8. According to Krause, in October 2002 and 2004, Chippas sent him unsolicited e-mails regarding his investments services and trading systems. *Id*. ¶¶ 9-10.

In December 2004, Chippas allegedly contacted Plaintiff again regarding certain new trading systems, including systems that were actively and personally managed by him, and that had spectacular performance histories. *Id*. ¶ 11. Plaintiff pleads that one system was Chippas's Day

Trading System, and he contends that Chippas recommended that he make a $50,000 initial investment in a Day Trading account using the Day Trading System. *Id*. ¶ 12. Krause alleges that Chippas made certain specific representations to him about the Day Trading System, including: Chippas would close all trading positions at the end of the day; the Day Trading System was suitable for retirement accounts; and Krause could rely on past performance history and would receive positive returns such as those identified on the website. *Id*. ¶¶ 13-15. Some of these representations were also allegedly posted on www.futurescom.com. *Id*.

According to Krause, on December 10, 2004, he agreed to purchase Chippas's services related to the Day Trading System. *Id*. ¶ 16. Krause contends that Chippas walked him through the website and recommended that he rely on the past performance results posted in the site. *Id*. He alleges that he paid for the Day Trading System by credit card, and then transferred $50,000 to be managed by Chippas pursuant to the Day Trading System. *Id*. ¶¶ 17-18.

In January 2005, Plaintiff alleges that he realized that his investment account was decreasing, not increasing, and Chippas reassured him that the Day Trading System was safe and that he should not worry. *Id*. ¶ 19. Plaintiff contends that Chippas also told him not to watch the account daily. *Id*. Krause alleges that he had lost all of the $50,000 by February 22, 2005. *Id*. ¶ 20. He contends that when he contacted Chippas, Chippas stated that he would get the money back. *Id*. ¶ 21. According to Krause, Chippas instructed him to transfer an additional $10,000 to the account so that Defendant could recover the initial investment. *Id*. ¶ 22. Plaintiff transferred an additional $10,000 to his account, but all of those funds were lost within three months. *Id*. ¶¶ 23-24.

Krause contends that Chippas violated several of the representations that he had made to him by keeping funds invested for extended periods of time, allowing positions to remain open for

multiple days, and failing to personally manage the funds. *Id*. ¶¶ 25-26. Chippas allegedly told Krause on July 11, 2005 that the performance information posted on the website was inaccurate and needed to be corrected. *Id*. ¶ 27. On August 17, 2005, Krause contends he contacted Chippas on August 17, 2005 to ask when his money would be recovered. *Id*. ¶ 29. According to Plaintiff, Chippas then told him that the $50,000 initial investment was insufficient to support the Day Trading System. *Id*.

## II.     Motion to Dismiss

Chippas moves to dismiss on several grounds. He argues that this court lacks personal jurisdiction over him, that this venue is improper, that Krause has failed to state a claim upon which relief can be granted, and that Plaintiff has failed to plead certain claims with specificity.

The court first considers whether the motion to dismiss is moot because Krause filed an amended complaint after Chippas filed his motion to dismiss. As Wright, Miller, and Kane have noted:

> Defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading. . . . To hold otherwise would be to exalt form over substance.

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1476. Moreover, Defendant appears to consider his motion pending, as he filed a reply brief after Krause filed his amended complaint, and argues that his motion should be granted. The court therefore considers the motion to dismiss in light of the Complaint, the live pleading.

The court finds it unnecessary to resolve the question of personal jurisdiction because it concludes that regardless of whether it has personal jurisdiction over Defendant, this case should

be litigated in Florida. In reaching this conclusion, the court turns to the parties' arguments regarding whether this forum is a proper venue and whether the forum selection clause choosing a Florida venue is enforceable. Defendant argues both that this venue is improper pursuant to 28 U.S.C. § 1406(a), and that Plaintiff agreed to a forum selection clause when he used the website www.futurescom.com. Plaintiff disputes that the forum selection clause was present on the website when he accessed it and argues that he never agreed to any forum selection clause.

The forum selection clause states:

> You agree that any controversy between FuturesCom.com, it[s] owners and/or employees and You as User of the site and/or Services offered within and/or provided within this site arising out [of] use of this site or services offered within this site regardless of the manner of resolution, **shall be arbitrated, litigated (tried in a court of law), or otherwise resolved by a tribunal location in Palm Beach County Florida**.

Def. App. 6 (emphasis added). This clause is part of the FuturesCom.com Service and Usage Agreement, which also states: "USE OF THIS SITE AND OR SERVICES WITHIN THIS FUTURESCOM.COM SITE SIGNIFIES YOUR AGREEMENT TO THIS SERVICE AND USAGE AGREEMENT." *Id*. at 5 (emphasis in original). Defendant argues that this is a mandatory forum selection clause that requires the court to dismiss for improper venue, or in the alternative, to transfer the case to the Southern District of Florida, Ft. Davis Division, pursuant to 28 U.S.C. § 1404(a).

The court construes Defendant's motion as a motion made pursuant to Rule 12(b)(3) for improper venue. In this circuit, a motion to dismiss pursuant to a forum selection clause is also treated as a Rule 12(b)(3) motion. *Lim v. Offshore Speciality Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir.), *cert. denied*, 546 U.S. 826 (2005). A "forum clause should control absent a strong showing that it should be set aside" and that such clauses should be enforced unless a party "could

clearly show that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). "To overcome the presumption that the forum selection clause is enforceable, the party challenging the clause must make a 'strong showing' that the clause is unreasonable." *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220 (5th Cir.), *cert. denied*, 535 U.S. 1055 (1998) (quoting *M/S Bremen*, 407 U.S. at 15). In this circuit,

> Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong policy of the forum state.

*Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997), *cert. denied*, 523 U.S. 1072 (1998) (internal quotations and citations omitted).

In this case, the parties dispute whether there is a binding forum selection clause. Defendant argues that the main page of FuturesCom.com includes a Service and Usage Agreement that a user must agree to before entering the main pages of the website. In response, Krause has submitted an affidavit that states:

> I never agreed to any service agreement on Chippas' Website, including any "Service and Usage Agreement", at any time I used his services. This includes during the free trial period in 2002 through late 2005. I entered the website without agreeing to any such service agreement through late 2005, and have never entered the website when any service agreement is present. This includes the "Service and Usage Agreement" attached to the appendix of Chippas' motion to dismiss filed with the Court in this matter.

Krause Aff. ¶ 15. With his reply, Chippas filed additional printouts from www.futurescom.com that he contends show that the forum selection clause was on the front page when Krause accessed the website. Second Chippas Decl. ¶ 3, Ex. 1.

Because whether Krause agreed to a forum selection clause is potentially dispositive of the venue issue, the court allowed Krause to file a response to the supplemental evidence submitted by Chippas with his reply. In this responsive brief, Plaintiff again contends that he never agreed to any service and usage agreement or forum selection clause and objects to the evidence presented by Defendant because it comes not from Defendant's business records, but from an internet archive service, www.archive.org.

The court considers whether a forum selection clause such as that presented by Defendant is potentially enforceable, and whether Plaintiff may be charged with constructive knowledge if Defendant has established that such a clause was included on the website when Plaintiff accessed it. While the Fifth Circuit has not addressed this specific question, at least one district court in this circuit has enforced similar forum selection clauses. *Greer v. 1-800-Flowers.com, Inc.*, 2007 WL 3102178, *3 (S.D. Tex. Oct. 3, 2007) (dismissing case based upon forum selection clause on first page of web site in all capital letters). Other courts have also enforced such forum selection clauses and dismissed or transferred cases that were not filed in the agreed-upon venue. *Eslworldwide.com, Inc. v. Interland, Inc.*, 2006 WL 1716881, *2 (S.D.N.Y. June 21, 2006); *Hugger-Mugger, L.L.C. v. Netsuite, Inc.*, 2005 WL 2206128, *5-6 (D. Utah Sept. 12, 2005); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 451-52 (E.D.N.Y. 2004).

In reviewing the forum selection clause and the evidence in this case, the court determines that Plaintiff has failed to meet his burden of a "strong showing" that the clause is unreasonable.

**Memorandum Opinion and Order – Page 7**

Although Plaintiff states that he did not accept any terms of service or usage, he admits accessing www.futurescom.com. While he argues that he did not "agree" to any service agreement and contends that he did not use the website when any service agreement was present, Defendant has presented evidence showing the website in December 2004, at the time that Krause made a payment to Chippas through the website. At the time, the lead page of the website clearly stated: "USE OF THIS SITE AND OR SERVICES OFFERED WITHIN THIS FUTURESCOM.COM SITE SIGNIFIES YOUR AGREEMENT TO THIS SERVICE AND USAGE AGREEMENT." Reply App. 4, Ex. 1. This page also included the forum selection clause naming Palm Beach County, Florida as the forum for the resolution of "any controversy . . . arising out of use [of] this site or services offered within this site." *Id.*

Considering these facts, the court determines that none of the four situations that might comprise "unreasonableness" exists in this case. There is no evidence that the forum selection clause is the product of fraud or overreaching. Plaintiff may bring his claims in Florida, and there is no evidence that that forum is unfair or poses a "grave unfairness." Plaintiff has not claimed that the application of Florida law is unfair, and there is no indication that there is any policy that would support not enforcing the forum selection clause. Accordingly, the court determines that the forum selection clause is valid and enforceable.

Defendant Chippas moved both to dismiss, and in the alternative, to transfer this case to Florida. The court has determined that pursuant to Rule 12(b)(3), this forum is improper because Plaintiff is bound by an enforceable forum selection clause. Rather than dismissing Plaintiff's claims, however, the court considers Defendant's alternative motion to transfer the case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

With respect to section 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). In applying section 1404(a), a district court is to first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003)). Once this initial determination is made, a district court

> turn[s] to the language of § 1404(a), which speaks to the issue of "the convenience of parties and witnesses" and to the issue of "in the interest of justice." The determination of "convenience" turns on a number of private and public interest factors, none of which [is] given dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*In re Volkswagen AG*, 371 F.3d at 203 (citations omitted). The existence of a forum selection clause is also a factor for consideration in making a section 1404(a) determination. *Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 522 (5th Cir.), *cert. denied*, 534 U.S 972 (2001).

Transfer of venue pursuant to 28 U.S.C. § 1404(a) is at the discretion of the court, considering "'[a]ll relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller &

E. Cooper, Federal Practice and Procedure § 3847 at 370 (1986)). The moving party bears the burden of demonstrating that a change of venue is warranted. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966); *Carlile v. Continental Airlines, Inc.*, 953 F. Supp. 169, 170 (S.D. Tex. 1997).

The court first determines that the Southern District of Florida is a judicial district in which these claims could have been filed. Defendant is a Florida resident who ran the disputed website from Florida, and who has agreed to jurisdiction in the district. The court has considered the various factors used to determine whether transfer is appropriate, including the existence of the forum selection clause. The court concludes that transfer to the agreed-upon Florida forum is appropriate pursuant to section 1404(a). Plaintiff's claims are based upon actions allegedly taken by Chippas, a Florida resident, who runs the business and website in question in Florida. Defendant has already agreed to personal jurisdiction in the Florida forum, and the terms of service also require the application of Florida law. Palm Beach County, the agreed-upon forum, is part of the Southern District of Florida. 28 U.S.C. § 89(c). Accordingly, the court determines that transfer to the Southern District of Florida is proper pursuant to section 1404(a).

Accordingly, the court **grants** Defendant's alternative motion to transfer this case to the Southern District of Florida pursuant to section 1404(a). The court **denies as moot** the remaining relief requested by Defendant.

### III. Conclusion

For the foregoing reasons, the court **grants** Defendant Chippas's alternative motion to transfer venue; **denies as moot** Defendant Chippas's motions to dismiss for lack of personal jurisdiction, improper venue, failure to state a claim, and failure to plead properly; and **denies as moot** the motions made by Defendant Investment Publications of the Palm Beaches, Inc. The court

hereby **transfers** this action to the Southern District of Florida. The clerk of the court shall effect the transfer in accordance with the usual procedure.

**It is so ordered** this 28th day of December, 2007.

_____
Sam A. Lindsay
United States District Judge